**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMIR HOSSEIN HOSSEINI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-10865 |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR DECLARATORY |
| MARCO RUBIO, *in his official capacity* | ) | AND INJUNCTIVE RELIEF UNDER |
| as, *Secretary of the U.S. Department of* | ) | THE APA |
| *State*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

1.      Plaintiff Mr. Amir Hossein Hosseini ("Mr. Hosseini") is harnessing artificial intelligence and working to make America's borders and roadways safe and efficient.

2.      While Mr. Hosseini entered the United States as a Canadian citizen without a visa more than thirty times, he has waited for the Department of State to issue him a visa since November 2016.

3.       Mr. Hosseini's ability to enter the United States ended without an explanation on October 29, 2023.

4.      Mr. Hosseini and the Boston-based affiliate of his company, EAIGLE U.S. Inc., petitioned him for a nonimmigrant visa as an intracompany transferee.

5.      While United States Citizenship and Immigration Services ("USCIS") quickly approved a nonimmigrant visa petition, the United States Consulate in Toronto, Canada, has yet to finish what it began in November 2016.

6.      Further delay is not only harming Mr. Hosseini and his company, but also our country's national security.

1

7.      EAIGLE U.S. Inc. is headquartered in Massachusetts, and further delay on Mr. Hosseini's visa application is contrary to the government's stated priority to secure our border.

8.      Defendant, Marco Rubio, in his official capacity as United States Secretary of State, has failed to act with due regard for the necessity required to process the nonimmigrant visa for Mr. Hosseini within a reasonable time. 5 U.S.C. §§ 555(b), 706(1).

9.      This Court should issue an order to compel an end to the administrative processing of Mr. Hosseini's visa application. 5 U.S.C. §§ 706(1)-(2).

## PARTIES

10.      Plaintiff Mr. Amir Hossein Hosseini was born in Iran. He currently resides in Toronto, Canada, and is a citizen of Canada. He is the founder and chief product officer of EAIGLE Inc. and classified to work as an intracompany transferee for EAIGLE U.S. Inc., which is based in Boston, Massachusetts.

11.      Defendant Marco Rubio is the Secretary of State and has responsibility to manage consular decisions to process and issue visas within a reasonable time. Secretary Rubio is sued in his official capacity.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction). This Court has authority to grant relief under the Declaratory Judgment Act (28 U.S.C. § 2201) and the APA, 5 U.S.C. § 702 *et seq*.

13.      This Court is authorized to compel agency action that is unlawfully withheld or unreasonably delayed, or which is contrary to law, an abuse of discretion, or arbitrary and capricious. 5 U.S.C. §§ 555(b), 706(1), 706(2).

2

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1) because this is a civil action where Defendant is an officer of the United States, and a substantial part of the acts and omissions have occurred in this district. Mr. Hosseini has extensive ties to Boston, Massachusetts due to his position at EAIGLE U.S. Inc., which sponsored Mr. Hosseini for an L-1B nonimmigrant visa. The inability for Mr. Hosseini to receive an answer on the visa application to work for Boston-based EAIGLE U.S. Inc., is at least one substantial act or omission giving rise to the complaint that has occurred in the District. 28 U.S.C. § 1391(e)(1)(B).

15.     Plaintiff has exhausted all requisite administrative remedies.

16.     Mr. Hosseini seeks performance of a nondiscretionary duty for an adjudication of nonimmigrant visa application in accordance with law. 8 U.S.C. § 1202(d); 22 C.F.R. §§ 41.103, 41.105, 41.106; 22 C.F.R. §§ 41.121(b)-(c).

## LEGAL BACKGROUND

17.     "The term 'nonimmigrant visa' means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this chapter."  8 U.S.C. § 1101(a)(26).

18.     The Immigration and Nationality Act ("INA"), as amended, allows for United States entities to transfer executive, managers, or employees with specialized knowledge from an operation overseas to a related entity in the United States to serve in a similar capacity in the United States. *See* 8 U.S.C. § 1101(a)(15)(L).

19.     The United States employer must normally file a petition with USCIS to request transfer of the foreign national manager or executive to the United States. *See* 8 U.S.C. § 1184(c)(1); 8 C.F.R. § 214.2(l)(1)(i).

20.     While each nonimmigrant visa category has its own application procedures, the process begins with a visa application. *See* 22 C.F.R. § 41.103(a); 8 U.S.C. § 1201.

21.     "The consular officer may require the submission of additional necessary information or question an alien on any relevant matter whenever the consular officer believes that the information provided in the application is inadequate to permit a determination of the alien's eligibility to receive a nonimmigrant visa. Additional statements made by the alien become a part of the visa application." 22 C.F.R. § 41.103(b)(2).

22.     "All documents required by the consular officer under the authority of § 41.105(a) are considered papers submitted with the alien's application within the meaning of INA 221(g)(1)." 22 C.F.R. § 41.103(b)(2).

23.     "All documents and other evidence presented by the alien, including briefs submitted by attorneys or other representatives, shall be considered by the consular officer." 22 C.F.R. § 41.105(a)(1) (emphasis added).

24.     A consular officer "must . . . properly and promptly" process a visa application, 22 C.F.R. § 41.106; 22 C.F.R. § 41.121(a).

25.     Section 1182(a) of Title 8, United States Code, designates "Classes of aliens ineligible for visas or admission."

26.     Section 1182(b) of Title 8, United States Code, governs "Notices of Denials." The statute provides:

> (b) Notices of denials.
> (1) Subject to paragraphs (2) and (3), if an alien's application for a visa, for admission to the United States, or for adjustment of status is denied by an immigration or consular officer because the officer determines the alien to be inadmissible under subsection (a), the officer shall provide the alien with a timely written notice that

4

(A) states the determination, and

(B) lists the specific provision or provisions of law under which the alien is inadmissible or [ineligible for] adjustment of status.

(2) The Secretary of State may waive the requirements of paragraph (1) with respect to a particular alien or any class or classes of inadmissible aliens.

(3) Paragraph (1) does not apply to any alien inadmissible under paragraph (2) or (3) of subsection (a).

8 U.S.C.S. § 1182(b).

27.     The statutory provision at 8 U.S.C. § 1201(g) is not an independent basis of ineligibility for a visa or independent basis to deny a nonimmigrant visa. *Cf.* 8 U.S.C. §§ 1182(a)-(b).

28.     Although the INA and regulations do not mention the phrase "administrative processing," visa officers rely on 8 U.S.C. § 1201(g) when placing a case in abeyance for administrative processing.

29.     As relevant here, INA § 221(g), 8 U.S.C. § 1201(g) is titled "Non-issuance of visas or other documents" and provides:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 212 [8 USCS § 1182], or any other provision of law, (2) the application fails to comply with the provisions of this Act, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 212 [8 USCS § 1182], or any other provision of law.

8 U.S.C. § 1201(g).

30.     The three subsections in INA § 221(g) work together in a logical and

sequential fashion but each serves a distinct purpose in the overall visa adjudication process.

31.     First, a consular officer must look at the visa application and any supporting documents to ensure it meets all procedural requirements. If it doesn't, the officer can deny the visa invoking § 221(g)(2).

32.     Second, if the application is complete, accurate, and otherwise procedurally compliant, the consular officer must evaluate whether any substantive ground for visa ineligibility is apparent on the face of the application.

33.     If the consular officer finds such apparent ineligibility, the application may be denied in accordance with § 221(g)(1)—but the basis for ineligibility itself resides in some other provision of the INA, not in § 221(g)(1) itself.

34.     Third and last, even if the application otherwise shows no facial ground of ineligibility, the consular officer may conduct any further investigation—including security checks and the like—needed to determine eligibility in accordance with § 221(g)(3).

35.     But the denial or grant of the visa that follows under this last provision does not—indeed cannot—happen until the consular officer obtains knowledge or reasonable belief of the applicant's ineligibility based on extrinsic information beyond the application. *See* 22 C.F.R. § 40.6.

36.     The complete adjudication of an application must in the end be about determining eligibility for the requested visa—even if intermediate administrative acts and investigations must take place beforehand. *See*, *e.g.*, 9 FAM 403.7-2 ("Adjudicating officers have the responsibility to . . . conduct as complete a clearance as necessary to establish the eligibility of an applicant to receive a visa.").

37.     It cannot be about just complying with some misplaced hyper-technical obligation to reflexively refuse or grant a visa at any moment, let alone just by the end of a visa interview. *See generally* 9 FAM 403.10-4 ("It is the policy of the U.S. Government to give the applicant every reasonable opportunity to establish eligibility to receive a visa. This policy is the basis for the review of refusals at consular offices and by the Department. It is in keeping with the spirit of American justice and fairness.").

38.     The regulations provide a mandatory "refusal procedure" for nonimmigrant applications. 22 C.F.R. § 42.121(b)

39.     "When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." 22 C.F.R. § 42.121(b)(1).

40.     Moreover, "[t]he officer shall note the reason for the refusal on the application. Upon refusing the nonimmigrant visa, the consular officer shall retain the original of each document upon which the refusal was based, as well as each document indicating a possible ground of ineligibility, and should return all other supporting documents supplied by the applicant." *Id*.

41.     "Nonimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of State, by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures." 22 C.F.R. § 42.121(c).

42.     "If the ground(s) of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the refusal must be reviewed without

delay; that is, on the day of the refusal or as soon as it is administratively possible. *If the ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal may be deferred for not more than 120 days*." *Id*. (emphasis added).

43.     "If the reviewing officer disagrees with the decision and he or she has a consular commission and title, the reviewing officer can assume responsibility and re-adjudicate the case. If the reviewing officer does not have a consular commission and title, he or she must consult with the adjudicating officer, or with the Visa Office, to resolve any disagreement." *Id*.

44.     Thus, while 8 U.S.C. § 1201(g) provides that "[n]o visa ... shall be issued to an alien if ... it appears to the consular officer ... that such alien is ineligible to receive a visa or other such documentation under section 1182," by statute, all nonimmigrant "visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added).

45.     The FAM further directs consular officers to complete processing.

46.     The FAM section governing nonimmigrant visas provides the mechanism to reactivate an application previously refused upon production of the requested information by the alien or when the necessary clearance is received. 9 FAM 403.10-4(b).

47.     In that case, the consular officer "should note the new information or results of the clearance process and issue or refuse the visa" without requesting the payment of an additional filing fee or the submission of a new application. *Id*.

48.     "Under no circumstances may a resolution of the question of eligibility be made before the Department's AO is received." 9 FAM 403.10-3(B).

## STATEMENT OF THE FACTS

49.     Mr. Hosseini is a mechanical engineer working as the Chief Executive Officer and Chief Product Officer of EAIGLE Inc., a Canadian company based in Markham, Ontario.

50.     EAIGLE Inc. is partially owned by a large American Private Equity Firm, Firmament, which is based in New York.

51.     The company's proprietary Artificial Intelligence ("AI") technology employs security cameras and software to automate the registry of heavy vehicles coming inbound and outbound at large transportation hubs, distribution facilities, ports, terminals and cross-border transportation.

52.     In addition, the AI technology helps with large importers to become compliant with CBP requirements such at Customs Trade Partnership Against Terrorism ("CTPAT").

53.     EAIGLE Inc. and its U.S.-branch, EAIGLE U.S. Inc., currently serve large, multi-national private and public companies across the United States and Canada including, the Federal Bridge Corporation, Walmart, Loblaw, Staples, Kraft Heinz, Kimberly Clark, TJX, Home Depot, and Trimac Transportation.

54.     EAIGLE Inc. is working with government entities in Canada and the United States to monitor cross-border traffic on the Blue Water Bridge in Port Huron-Ontario.

55.     EAIGLE Inc. has invested $100,000 in a $200,000 project for the Blue Water Bridge.

56.     The Blue Water Bridge project is a joint venture contract with Province of Ontario and Federation of Bridges, in association with the Government of Canada.

57.     The real-time identification and validation of trucks, trailers, and containers, within and across the international borders is a vital national security interest of the United States and Canada.

58.     The Blue Water Bridge project will enhance the government's ability to track and identify heavy vehicle traffic crossing into our country.

59.     As the founder of EAIGLE Inc. and the inventor of the technology, the success of the project depends on Mr. Hosseini's ability to enter the United States.

60.     It is critical for Mr. Hosseini to regularly attend project site visits and meetings at the United States and Canadian border to demonstrate and teach EAIGLE Inc.'s technology to CBP and CBSA.

61.     The ability to digitally monitor heavy vehicle traffic will help the government's interests in preventing bad actors from entering the United States and Canada and tracking those who cross the border and fail to act in accordance with law.

62.     Mr. Hosseini's inability to enter the United States has caused delays to the Blue Water Bridge project, and it is stunting work for large importers to the United States such as Kimberly Clark, Kraft Heinz, and TJX.

63.     EAIGLE Inc. plans to shift production, testing, and research and development to the United States, but it needs to first hire a team of American workers, which cannot take place until the Consulate General in Toronto resolves Mr. Hosseini's visa application.

64.     Mr. Hosseini cannot make site visits to the bridge and other large importers' logistic facilities because it lies, in part, in the United States.

65.     For example, Mr. Hosseini missed a critical site visit and meeting with government officials and corporate clients on February 27, 2025.

66.     On March 26, 2025, Mr. Hosseini missed a meeting with TJX supply chain executives.

67.     Mr. Hosseini has a scheduled board meeting as well as meetings with executives from Kraft Heinz in April 2025.

68.     As a Canadian citizen, Mr. Hosseini lawfully entered the United States without a visa more than thirty times.

69.     Mr. Hosseini also applied and received nonimmigrant "B1/B2" visitor visas for business or pleasure in 2012, and 2015, using his Iranian passport.

70.     In 2016, the Consulate General in Toronto placed Mr. Hosseini's application for a renewed nonimmigrant visa in administrative processing, which has never completed.

71.     While in process for a new visa, Mr. Hosseini was allowed to enter and exit the United States as a Canadian citizen.

72.     Between August 1, 2023 and October 17, 2023, Mr. Hosseini entered the United States five times without an issue.

73.     On October 17, 2023, Mr. Hosseini entered the United States for a three-day business trip.

74.     On October 29, 2023, however, CBP informed Mr. Hosseini that he needed to apply for a visa and that a prior visa application from 2016 remained pending.

75.     In March 2024, Mr. Hosseini, via his counsel, communicated with CBP and was invited to seek admission directly at the Peace Bridge, an international bridge over the Niagara River using the approval notice.

76.     On July 23, 2024, Mr. Hosseini presented himself at the Peace Bridge, but CBP chose not to admit Mr. Hosseini because it discovered the 2016 administrative processing which remained ongoing.

77.     CBP informed Mr. Hosseini that his administrative processing would have to end before he could seek admission on his L-1B visa, notwithstanding the one-year period of validity to enter the United States as an intracompany transferee.

78.     On August 12, 2024, EAIGLE U.S. Inc., filed an L-1B nonimmigrant visa on behalf of Mr. Hosseini.

79.     On November 23, 2024, USCIS approved the petition for a one-year period of employment in the United States.

80.     Mr. Hosseini quickly submitted a new visa application to the United States Consulate in Toronto (Application ID, **AA00E6V8O1**), in the hope that the renewed application would resolve the nine-year period of administrative processing.

81.     On February 4, 2025, Mr. Hosseini appeared before a consular officer who requested his CV and his military exemption card.

82.     Mr. Hosseini promptly submitted the requested documents and requested an expedited decision.

83.     Mr. Hosseini emphasized the critical meetings he had scheduled in February with clients including Blue Water Bridge as well as an expert panel and talk session in Chicago.

84.     The L-1B visa petition was only authorized for a one-year period of employment and every day of delay wasted another day of employment in the United States.

85.     On February 21, 2025, Mr. Hosseini received an email from the United States Consulate General in Toronto stating it "**has no control over the pace of the administrative**

12

**processing** and cannot give an estimated completion timeline. Please be assured that we will contact him as soon as we receive the necessary response. Until then, our consulate can take no action on his case."

86.     On April 7, 2025, the United States Consulate General issued Mr. Hosseini a nearly identical response.

87.     Despite legally entering and exiting the United States for several years and working for government-supported programs to secure our border, Mr. Hosseini has remained in administrative processing for nine-and-one-half-years.

88.     Mr. Hosseini is working with our government on a joint project that will help secure our border and protect the United States.

89.     Continuation of the administrative limbo will hurt America.

<u>**FIRST CAUSE OF ACTION**</u>
***Ultra Vires* Action**

90.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

91.     The APA defines "agency action" to "includ[e] the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

92.     Titled "Scope of Review," APA, 5 U.S.C. § 706, provides:

a reviewing court shall—

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

93.     Defendant has not acted in accordance with law.

94.     The regulations provide standards for review and completion of a visa application that does not end at the start of administrative processing. 22 C.F.R. § 41.103(b)(2), 41.105, 41.121(a)-(c).

95.     All documents required by the consular officer under the authority of § 41.105(a) are considered papers submitted with the alien's application within the meaning of INA 221(g)(1)." 22 C.F.R. § 41.103(b)(2).

96.     "The consular officer is authorized to require documents considered necessary to establish the alien's eligibility to receive a nonimmigrant visa. All documents and other evidence presented by the alien, including briefs submitted by attorneys or other representatives, shall be considered by the consular officer." 22 C.F.R. § 41.105(a)(1) (emphasis added).

97.     If the visa officer has to consider the documents submitted and those documents include those asked during administrative processing (or a refusal under INA § 221(g)), then a

14

visa officer absolutely has a duty after a case is placed in administrative processing; he or she must consider the evidence requested.

98.     By regulation, "[a] visa can be refused only upon a ground specifically set out in the law or implementing regulations."  22 C.F.R. § 40.6.

99.     The consular officer assigned to Mr. Hosseini's pending visa applications requested additional information in accordance with the regulations and must consider this information prior to issuing a final decision. 22 C.F.R. § 41.105(a).

100.    The consular officer has failed to comply with the nondiscretionary duty to consider the information requested and reach a final decision. 22 C.F.R. § 41.105.

101.    The consular officer has failed to comply with the refusal process set forth in the regulations. 22 C.F.R. §§ 41.121(b)(1)-(c).

102.    The consular officer "must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal. The officer shall note the reason for the refusal on the application."  22 C.F.R. § 41.121(b)(1).

103.    The consular officer has not informed Mr. Hosseini that he is subject to any ground of ineligibility.

104.    Mr. Hosseini was permitted to enter the United States after November 2016, when he was originally placed in administrative processing.

105.    Section 221(g) of the INA is not a ground of inadmissibility or exclusive basis to deny a visa, and it did not act to bar Mr. Hosseini's entry to the United States between 2016 and October 2023. *Compare* 8 U.S.C. §§ 1182(a)-(b) *with* 8 U.S.C. § 1201(g).

106.    "Regulations with the force and effect of law supplement the bare bones" of federal statutes, and that, even in areas of expansive discretion, agencies must follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 268 (1954).

107.    The regulations require consideration of evidence submitted during administrative processing and contemplate a final determination *after consideration* of the requested information in compliance with the refusal process. 22 C.F.R. § 42.103(b); 22 C.F.R. § 103.5.

108.    Nonimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of State, by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures."  22 C.F.R. § 42.121(c) (emphasis added).

109.    "If the ground(s) of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the refusal must be reviewed without delay; that is, on the day of the refusal or as soon as it is administratively possible. If the ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal may be deferred for not more than 120 days." *Id*.

110.    Defendant has arbitrarily, capriciously, and unlawfully failed to comply with the regulations governing the nondiscretionary process to adjudicate nonimmigrant visas. *See* APA § 706(2)(A).

111.    Defendant has not acted in accordance with the regulatory procedures for deciding the nonimmigrant visa in violation of APA § 706(2)(D).

112.    This Court should set aside Defendant's violation of law and require Defendant to process Mr. Hosseini's nonimmigrant visa application in accordance with the regulations.

## SECOND CAUSE OF ACTION
### Unreasonable Delay

113.    Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

114.    Congress requires federal agencies to act "[w]ith due regard for the *convenience and necessity* of the parties or their representatives and within *a reasonable time*, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b) (*emphasis added*).

115.    The Court has the authority under the APA to compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

116.    The regulations speak in mandatory language and require consular officers to process a pending visa application to a final conclusion, including notice of any specific grounds of ineligibility if and whether a waiver is available. 22 C.F.R. §§ 40.6; 41.106; 41.121.

117.    In determining whether an agency has failed to act within a reasonable time, the courts consider the six *TRAC* factors. *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016); *Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Env't Prot.*, 163 F.3d 74, 82 n.9 (1st Cir. 1998). *Telecommunications Research & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

118.    The six factors require consideration of:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

17

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (internal quotation marks and citations omitted).

119.    Resolution of these factors "are most properly addressed based on a factual record at the summary judgment stage." *Rezaii v. Kennedy*, No. 1:24-cv-10838-JEK, 2025 U.S. Dist. LEXIS 44346, *13-14 (Feb. 24, 2025); *See Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 32 (D.N.H. 2023) ("Because an analysis of the TRAC factors typically requires the court to wade through the particular facts and circumstances of an agency's delay, courts generally conclude that undertaking such a fact-bound analysis at the motion to dismiss stage is premature.") (quotation marks omitted).

120.    Preliminary consideration of the circumstances presented here, however, reveals that each *TRAC* factor weighs in favor of Mr. Hosseini.

121.    On the first *TRAC* factor, Defendant has not provided an identifiable rationale for failing to complete processing since November 2016.

122.    Discovery is needed to decipher the methodology employed to process Mr. Hosseini's visa applications in this instance, if any.

123.    Turning to the second *TRAC* factor, the statutory and regulatory design reflects a reasonable expectation of timely processing within 120 days of an interview. 22 C.F.R. § 41.121(c).

124.    Congress could not have intended a visa applicant to remain in administrative limbo for nine-and-one-half years for a nonimmigrant visa.

125.    Indeed, Mr. Hosseini was permitted to repeatedly  enter the United States  while he remained in processing for a visa.

126.    The continued ability to travel to the United States, but inability to receive a final decision on an approved nonimmigrant visa petition without any notice of the reasons why or a request for clarifying information is not something that is objectively reasonable.

127.    No one would expect an agency to take nine years to reach a decision on a nonimmigrant visa for a person screened and processed while repeatedly entering the United States.

128.    The harm factor weighs heavily in favor of Mr. Hosseini.

129.    Mr. Hosseini's Blue Water Bridge Project seeks to make our borders secure.

130.    This is America's top priority that the current administration has vigorously enforced.

131.    It is nonsensical for our government to support Mr. Hosseini's work, but not process his nonimmigrant visa so he can meet with officers and government officials.

132.    Mr. Hosseini and the United States's interests remained aligned, and further delay harms our country's national security.

133.    The third and fifth *TRAC* factors thus favor Mr. Hosseini.

134.    Turning to the fourth *TRAC* factor, an order requiring the Consulate General to complete processing would not impact on the ability to manage the caseload of nonimmigrant visa applications in administrative processing as the deadline to finish review passed years ago.

135.    Mr. Hosseini is willing to work with the Defendant and the Consulate General to resolve any issue standing in the way of a decision on his visa application.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff respectfully prays that the Court will set this matter for a hearing as soon as possible, and that upon hearing, the Court will:

A.    Take jurisdiction over this case;

B.    Declare the failure to complete processing on the L-1B nonimmigrant visa application is not in accordance with law and procedure;

C.    Declare the failure to completely process the L-1B nonimmigrant visa application after processing Mr. Hosseini's prior application for nine years constitutes an unreasonable delay under the facts of this case;

D.    Enter an order compelling Defendant to complete processing and issue a final decision on the nonimmigrant visas within 7 days;

E.    Award Plaintiff reasonable counsel fees and costs under the Equal Access to Justice Act or any other provision of law; and

F.    Enter and issue other relief that the Court deems just and proper.

April 9, 2025                                    Respectfully submitted,

                                                */s/ Jesse M. Bless*
                                                JESSE M. BLESS
                                                MA Bar No. 660713
                                                Bless Litigation LLC
                                                6 Vineyard Lane
                                                Georgetown MA 01833

781.704.3897
jesse@blesslitigation.com
Attorney for Plaintiff