## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

AMIR HOSSEIN HOSSEINI,

Plaintiff,

v.

MARCO RUBIO, in his official capacity as,
Secretary of the U.S. Department of State,

Defendant.

</td><td>

Civil Action No. 1:25-CV-10865-GAO

</td></tr>
</table>

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

### INTRODUCTION

Plaintiff Amir Hossein Hosseini, a Canadian citizen, seeks an order directing a consular office to complete the processing of his nonimmigrant visa application. Plaintiff's Complaint should be dismissed for two reasons.

*First*, Plaintiff's visa application has been adjudicated in accordance with the applicable regulatory requirement which states that, once the application has been properly completed and executed, "the consular office must issue the visa, *refuse the visa*, or…discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added). Here, a consular office refused Plaintiff's visa application and placed it in administrative processing after conducting an interview with him on February 4, 2025. *See* Doc. 1 ¶¶ 81-85. There is no statutory or regulatory provision that requires Defendant to take further action on a refused visa application. *See Conley v. U.S. Dep't of State*, 731 F. Supp.3d 104, 111 (D. Mass. 2024) (dismissing complaint "because defendants have acted on the visa application [and] they have not failed to take any legally required action."); *Taha v. Blinken*, 765 F. Supp. 3d 91, 96 (D. Mass. 2025) ("Because no statute or regulation requires

1

additional action by defendants after placement into 'administrative processing,' this Court is without authority to compel further action on the visa application."). Further, the doctrine of consular non-reviewability prevents courts from reviewing a consular office's decision to refuse or order further action on a visa application.

*Second*, even if the merits are reached, Plaintiff fails to state a claim of unreasonable delay under the factors identified in *Telecommunications Research & Action Center v. Federal Communications Commission* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984), because the alleged "delay"—approximately four months since the visa application was refused—is not unreasonable.

## BACKGROUND

### A.    Legal Background

The Immigration and Nationality Act ("INA") provides that an alien may not be admitted into the United States without having been issued an immigrant or nonimmigrant visa. *See* 8 U.S.C. §§ 1181(a), 1182(a)(7). Once the relevant documents and fees are collected and a visa appointment is available, a visa applicant must attend an in-person interview at a U.S. Embassy or Consulate to present his visa application. 8 U.S.C. § 1202(h)(1). At the interview, a consular officer will determine the "alien's eligibility to receive a visa." 22 C.F.R. § 41.102(a). Authority to grant or refuse a visa application rests exclusively with the consular officer and the burden of proof is on the applicant to "establish that he is eligible to receive such visa." 8 U.S.C. § 1201(a)(1); 8 U.S.C. § 1361. The consular officer must ensure the applicant is not inadmissible under any provision of the INA. *See* 8 U.S.C. § 1361.

Pursuant to 22 C.F.R. § 41.121(a), after the interview for a nonimmigrant visa, "the consular officer must issue the visa, refuse the visa, or … discontinue granting the visa." Refusals of nonimmigrant visas "must be based on legal grounds, such as ... INA § 221(g)." *Id.* §

41.121(a).  Under § 221(g), a consular officer must refuse to issue a visa if it appears "from statements in the application, or in the papers submitted therewith" that the alien is ineligible for a visa under any "provision of law" or if the "officer knows or has reason to believe that such alien is ineligible to receive a visa."  8 U.S.C. § 1201(g); 22 C.F.R. § 40.6.

According to the State Department's Foreign Affairs Manual ("FAM"), "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." Dep't of State, 9 FAM 302.1-8(B).[1]  Per the State Department's website, "[t]here are only two possible outcomes for complete and executed U.S. visa applications … [t]he consular officer will either issue or refuse the visa."[2]  If a visa is refused, "a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa.  In such cases, refused visa applications warrant further administrative processing."  *Id.*; *see also Taha*, 765 F. Supp. 3d at 95 (recognizing that placement in "administrative processing" necessarily means the visa application has been refused).  After such discretionary administrative processing, "the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied.  Alternatively, the officer may conclude that the applicant remains ineligible for a visa."  *Id.*  Additionally, the State Department makes clear that if "an application was refused and a consular officer indicates administrative processing is required, processing times can vary based on individual circumstances."  But again, notably, there is no statutory command to engage in additional administrative processes that could assist noncitizens to meet their burden to demonstrate eligibility for a visa.

---

[1] https://fam.state.gov/fam/09FAM/09FAM030201.html
[2] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html

### B.    Factual Background

On August 12, 2024, Plaintiff's employer, EAIGLE U.S. Inc., filed an L-1B nonimmigrant visa petition on behalf of Plaintiff.  Doc. 1 ¶ 78.  On November 23, 2024, USCIS approved the L-1B petition for a one-year period of employment in the United States.  Doc. 1 ¶ 79.  Shortly thereafter, Plaintiff submitted a visa application to the United States Consulate in Toronto, Canada.  Doc. 1 ¶ 80.  On February 4, 2025, Plaintiff was interviewed by a consular officer.  Doc. 1 ¶ 81.  Plaintiff's visa application was refused under 8 U.S.C. § 1201(g) and placed in administrative processing.  Doc. 1 ¶¶ 81, 85-86.

Approximately two months later, on April 9, 2025, Plaintiff filed the instant Complaint in which he seeks relief pursuant to the Declaratory Judgment Act and the Administrative Procedure Act ("APA").  *See* Doc. 1 ¶¶ 12-13.  Plaintiff contends that his visa application remains pending and that the delay in adjudication is unlawful.  Doc. 1 ¶¶ 90-135.  He seeks an order from the Court compelling Defendant to complete the administrative processing for his visa application with seven days.  Doc. 1 p. 20.

### STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) requires dismissal of a complaint when the court lacks subject-matter jurisdiction to consider the claims set forth.  A plaintiff has the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a court must accept as true all

the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. *Id.*

## ARGUMENT

### A.    Defendant Is Not Unlawfully Withholding Or Unreasonably Delaying The Adjudication Of Plaintiff's Visa Application.

Plaintiff's Complaint should be dismissed as Defendant has taken the required statutory and regulatory action on Plaintiff's visa application and therefore the claim of unlawful withholding or unreasonable delay is meritless.

### 1.    Defendant fulfilled its statutory and regulatory duty when Plaintiff's visa application was refused.

A claim under the APA alleging that an agency has "unlawfully withheld" agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv.*, 674 F.3d 97, 99 (1st Cir. 2012). While the APA "authorizes courts to 'compel agency action . . . unreasonably delayed' [,] a delay cannot be unreasonable with respect to action that is not required." *Id.* at 63 n.1; *see Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) ("But where an agency is not required to do something, we cannot compel the agency to act—let alone to act faster." *citing S. Utah*, 542 U.S. at 63 n.1.). Accordingly, at the threshold, a litigant must identify a clear "non-discretionary act," *id*. at 64, or "a clear duty to act[,]" *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), that the law compels an agency to take. Absent such a clear, non-discretionary duty, an agency's delay to act, however long, cannot be unlawful or unreasonable.

Here, Plaintiff recognizes that his application was refused but argues that Defendant has a legal duty to take further action on his refused visa application. Doc. 1 ¶ 94. This Court has rejected that argument. For example, in *Conley v. U.S. Dep't of State,* Chief Judge Saylor dismissed a similar complaint where a consular officer refused a visa application but submitted it for administrative processing. 731 F. Supp.3d 104, 110-11 (D. Mass. 2024). The court explained that "the consular officer's refusal of a visa application is a final decision for the purposes of an unreasonable-delay claim under the APA." *Id.* at 111. The court concluded that it "is undisputed that the application has been denied" and while "that denial might be subject to reconsideration in the future, that alone does not support a viable claim for unreasonable delay". *Id.* Explaining that a "denial is 'final' unless and until it has been overturned" and because "defendants have acted on the visa application[] they have not failed to take any legally required action," the court dismissed the unreasonable delay claim. *Id.*[3]

More recently, Judge Gorton agreed that "a visa application subject to administrative processing and reconsideration is a final decision and therefore cannot form the basis of a viable unreasonable delay claim under the APA." *Taha*, 765 F. Supp. 3d at 95. The court found itself "without authority to compel further action on the visa application" because "no statute or regulation requires additional action by defendants after placement into 'administrative processing'". *Id.*

Courts outside this District have likewise determined that the State Department has no duty to take further action on a refused visa application. *See e.g., Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) ("[Plaintiff] sued . . . to obtain the

---

[3] *But see Mustafin v. Rubio*, Civil Action No. 24-cv-12484-ADB (Jun. 5. 2025); *Ahadian v. Rubio*, Civil Action No. 24-cv-12168-ADB (Jun. 6, 2025); *Sanadgol v. Rubio*, Civil Action No. 24-11822-LTS (Jun. 12. 2025).

exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application. Because (she) has not identified an adequate legal basis for that duty, the district court properly dismissed her claim."); *Khadikov v. Rubio*, No. CV 24-5919, 2025 WL 860493, at *6 (E.D. Pa. Mar. 19, 2025) (because there is "no mandatory, nondiscretionary duty to 'reconsider' [plaintiff's] refused visa application that is in 'administrative processing,'… the Court cannot compel the Embassy to do so."); *Kaveh v. Rubio*, No. 24-CV-0977-ABA, 2025 WL 814533, at *3 (D. Md. Mar. 13, 2025) (finding that the "consular officer met [the required] duty by refusing the visa pursuant to INA 221(g), which section 41.121 expressly recognizes as a proper way to discharge this duty … [t]hus, dismissal is appropriate."); *Khalo v. Goldman*, No. 4:24CV3176, 2025 WL 779741, at *4 (D. Neb. Mar. 7, 2025) (holding that "placing a visa application in administrative processing after a consular officer issues an INA § 221(g) refusal does not leave the defendants with a mandatory, non-discretionary duty to further adjudicate the application within a reasonable time."); *Rashed v. Blinken*, No. 24 CIV. 964 (PAE), 2024 WL 4904701, at *4 (S.D.N.Y. Nov. 27, 2024) (recognizing "the common-sense appeal of plaintiffs' argument that a 'final' decision cannot be one involving further administrative processing" but nonetheless finding that "[t]he consular officer's refusal to issue a visa application at the close of the interview was thus a 'final decision' upon which further action cannot be legally compelled."); *Ishaq v. Schofer*, No. 8:24-CV-00207-TJS, 2024 WL 3729107, at *4 (D. Md. Aug. 8, 2024) (considering four statutory provisions and finding that "none of which create a clear duty for Defendants" to take further action on a refused visa application.); *Berenjian v. Blinken*, No. 1:24-CV-00663-MSN-IDD, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) ("This refusal at the time of the applicant's interview discharges the government's obligations with respect to the application.").

In line with these decisions, this Court should find that Defendant fulfilled its statutory and regulatory duty when Plaintiff's visa application was refused post-interview on February 4, 2025 in accordance with the applicable regulation—22 C.F.R. § 41.121(a).

**2.    Plaintiff's arguments that a non-discretionary duty exists fail.**

In an attempt to establish a non-discretionary duty to take further action on his refused visa application, Plaintiff first references the APA's general statutory directive found at 5 U.S.C. § 555(b) which states that "within a reasonable time, each agency shall proceed to conclude a matter presented to it". Doc. 1 ¶¶ 8, 13. But, as explained by the U.S. Court of Appeals for the D.C. Circuit in a nearly identical case, "Section 555(b) does no such thing." *Karimova*, 2024 WL 3517852, at *3. The D.C. Circuit explained that "Section 555(b) does not in any way dictate how the agency can handle [plaintiff's] rejected paperwork once a decision has been made." *Id.* at *4. Instead of supplying a discrete command that a court could cite to compel further action on a refused visa application, the APA's general provision is a "non-specific directive to all agencies" which "leaves officials ample room for judgement based on the circumstances." *Id.*

Other courts routinely hold similarly. *See e.g.*, *Esghai v. U.S. Dep't of State*, No. 24 CIV. 2993 (PAE), 2024 WL 4753799, at *5 (S.D.N.Y. Nov. 12, 2024) (statutory framework and traditional deference owed to consular officers "undermines [plaintiff's] claim that § 555(b) requires the State Department to revisit its refusal of [the visa] application."); *Artan v. Blinken,* No. 4:24CV3114, 2024 WL 4611697, at *6 (D. Neb. Oct. 11, 2024) (Section "555(b) does not require the DOS to take a discrete agency action to … readjudicate any visa application within any specific timeframe".); *Ramizi v. Blinken,* No. 5:23-CV-000730-M, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) ("Section 555(b) does not identify a discrete agency action; by its plain terms, it applies to *every* agency action)(emphasis in original)); *Ishaq*, 2024 WL 3729107, at *5

(explaining that the general nature of the provision does not provide the discrete agency action required to compel agency action.); *Yaghoubnezhad v. Stuff,* 734 F. Supp. 3d 87, 102 (D.D.C. 2024) (same).  As such, Section 555(b) does not compel further action on Plaintiff's refused visa application.

Plaintiff also argues that Defendant's implementing regulations suggest that a visa application cannot be considered fully adjudicated until any administrative processing is complete. Doc. 1 ¶¶ 20-24, 35-43.  But the plain language of Defendant's implementing regulations does not support that argument.  The provision for issuing or refusing nonimmigrant visa applications is found at 22 C.F.R. § 41.121 and states that the consular office must "issue the visa, refuse the visa…or discontinue granting the visa."  This provision does not state that a consular office must re-adjudicate a refused visa.  Defendant thus fulfilled the only duty imposed by that regulation when the consular office refused Plaintiff's visa application under INA § 221(g).  *See Tesfaye*, 2022 WL 4534863, at *5 ("It is unclear to the Court what 'non-discretionary duty' purportedly imposed by [22 C.F.R. 41.121(a) has been 'unlawfully withheld.'  Plaintiffs themselves indicate that after their interview, their applications were 'refused' under INA § 221(g)—in other words that the consular office took the precise action directed by the regulation.").

Plaintiff dismisses the plain language of this regulation as a "misplaced hyper-technical obligation".  Doc. 1 ¶ 37 (referencing 22 C.F.R. § 41.121(a)).  According to Plaintiff, the "complete" adjudication of a visa application instead requires review of "extrinsic information beyond the application."  Doc. 1 ¶¶ 35-37 (citing 22 C.F.R. § 40.06, 9 FAM 403.7-2, 9 FAM 403.10-4).  But, again, this requirement is not contained in the plain language of § 41.121(a)—nor is it contained in the provisions cited by Plaintiff—and this argument has been rejected by this Court and others.  *See Taha*, 765 F. Supp 3d at 96 (no statute or regulation requires additional

action after application placed in "administrative processing").

In *Conley*, Chief Judge Saylor held similarly, explaining that "[b]ecause defendants have acted on the visa application, they have not failed to take any legally required action". 731 F. Supp.3d at 110-11.[4]  *See also Taha*, 2025 WL 605008, * 3 ("no statute or regulation requires additional action by defendants after placement into 'administrative processing'"); *Yaghoubnezhad*, 734 F. Supp. 3d at 103 (explaining that "no statute nor regulation requires anything more—whether that be a "final" decision or the completion of ""administrative processing.""); *Meleo v. Blinken*, No. CV 23-03495 (RK), 2024 WL 4345289, at *2 (D.N.J. Sept. 30, 2024) (the refusal of the visa application "fully discharged their duty to adjudicate it.  This means [p]laintiff has not properly alleged an injury in fact or relief the Court can provide."); *Ramizi,* 2024 WL 3875041, at *10-12 (same); *Esghai,* 2024 WL 4753799, at * 4-5 (same).

Plaintiff also cites Section 41.121(c) as a potential source of a non-discretionary duty in that it provides that "[n]onimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of State, by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures."  Doc. 1 ¶ 41 (citing 22 C.F.R. § 42.121(c)).  But the Secretary of State has described the review required by this provision as a "management and instructional tool" for "maintaining professional standards."  *See* Visas:  Documentation of Nonimmigrants Under the Immigration and national Act, as Amended, 71 Fed. Reg. 37494-01 (June 30, 2006) (to be codified

---

[4] In *Ghannad-Rezaie v. Laitinen,* No. 24-CV-11665-PBS, 2024 WL 4849587, at *5 (D. Mass. Nov. 21, 2024), Judge Saris determined that a mandatory duty to reconsider a refused visa application stemmed from 22 C.F.R. § 42.81(e)'s provision that states "[i]f a visa is refused, and the applicant … adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case *shall* be reconsidered." (emphasis in original). However, without conceding the conclusion reached by Judge Saris, this regulation is not implicated in this matter as it concerns the issuance or refusal of immigrant visa applications, rather than nonimmigrant visa applications at issue here.  The corresponding regulatory provision for nonimmigrant visa applications, 22 C.F.R. § 41.121(a), does not contain language similar to 22 C.F.R. § 42.81(e).

at 22 C.F.R. pt. 41). And the Secretary has provided additional guidance in the FAM, instructing that "[r]eviewing officers must review as many [nonimmigrant visa] refusals as is practical, but not fewer than 10 percent of refusals for each adjudicating day." 9 FAM 403.12-3. Put simply, the review required by Section 41.121(c) is not automatic. *See Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 100 (D.D.C. 2024).

According to the regulation, this discretionary review generally must take place "on the day of the refusal or as soon as it is administratively possible." 22 C.F.R. § 41.121(c). However, when an applicant's "ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal may be deferred for not more than 120 days." *Id.* To the extent Plaintiff suggests this section imposes a nondiscretionary duty to complete administrative processing with 120 days, this argument is without merit. To start, the regulation's text does not suggest that a consular supervisor must review *all* visa refusals that eventually may be overcome by the presentation of extrinsic evidence. *Id.* Instead, as with all visa refusals, review of refusals that are subject to administrative processing are required only as far as is necessary "to ensure compliance with laws and procedures." *Id.* And, even when engaging in such a supervisory review, the regulation states only that consular officers "may" defer review "for not more than 120 days" when otherwise they would have to complete review "as soon as it is administratively possible." 22 C.F.R. § 41.121(c). Nothing in Section 41.121(c) imposes a duty for the State to review any particular visa refusal within a certain time. *Id.*; *see also Yaghoubnezhad*, 734 F. Supp. 3d at 101 (rejecting argument that Section 41.121(c) creates non-discretionary duty).

In sum, the Court cannot "compel the Government to do something they have already done: adjudicate [p]laintiffs' nonimmigrant visa application[s]." *Aslam v. Heller*, No. 1:23CV971, 2024 WL 3535389, at *7 (M.D.N.C. July 23, 2024). Plaintiff's claims fail as a result.

**B.    Plaintiff's Claims Are Untenable Due To The Consular Nonreviewability Doctrine.**

The Supreme Court recently explained that the INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular nonreviewability." *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024). Here, with Plaintiff's visa application adjudicated and refused, and with no law that provides authorization to allow the Court to review the visa refusal, Plaintiff's claim is nonjusticiable. The refusal decision, like any other consular decision, is protected from judicial review by the doctrine of consular nonreviewability.

The First Circuit has held that "[u]nder the doctrine of consular nonreviewability, in immigration disputes nonconstitutional issues are generally outside the jurisdiction of the courts." *Chiang v. Skeirik*, 582 F.3d 238, 242 (1st Cir. 2009); *see also Adams v. Baker*, 909 F.2d 643, 649 (1st Cir. 1990) ("We note, first, that in the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State, 8 U.S.C. § 1104(a)(1), and are similarly not reviewable by courts."); *Samandar v. Blinken*, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) ("Generally, under the doctrine of consular nonreviewability, courts may not review a consular officer's decision to deny a visa application.").

Although the First Circuit has not directly addressed this issue, another session of this Court determined in a factually similar matter that the doctrine prevents courts from reviewing a decision to refuse a visa application and subjects complaints seeking judicial orders regarding visa re-

adjudications to dismissal.  *See Shenouda III Inc. v. Blinken*, No. 22-cv-11046-GAO, ECF. No. 19 (D. Mass. Sept. 29, 2023) (motion to dismiss allowed as consular nonreviewability doctrine barred review of consular officer's decision to refuse visa).  *See also ZigZag, LLC v. Kerry*, No. 14-14118-DJC, 2015 WL 1061503, at *4 (D. Mass. Mar. 10, 2015) ("Here, the consul did not refuse to act … [r]ather, … the consular office in Moscow refused Kostochka's visa application pursuant to INA § 221(g) ….  Therefore, the doctrine of consular nonreviewability, which applies to decisions of consular officers, is applicable.").  *But see Ghannad-Rezaie*, Civil Action No. 24-cv-11665-PBS, 2024 WL 4849587, at *3 (D. Mass. Nov. 21, 2024) (finding that the doctrine of consular nonreviewability does not preclude judicial review of unreasonable delay claims for visa applications.)

Courts around the country have applied the doctrine when faced with similar challenges to visa refusals.  *See e.g.*, *Liew v. Sanders*, No. 1:24-CV-00342 (TNM), 2024 WL 3026538, at *4 (D.D.C. June 17, 2024) ("the doctrine of consular nonreviewability forbids the Court from tinkering with State's refusal decision."); *Yaghoubnezhad*, 734 F. Supp. 3d at 104 ("[b]ecause consular officers have validly refused [p]laintiffs' visas, the Court cannot order further review or adjudication of those refusals without requiring consular officers to examine their substance."); *Senobarian*, 2024 WL 897566, at *3 ("the doctrine of consular nonreviewability precludes the Court from granting a remedy in this action" when the visa application had been refused); *Bamdad v. United States Dep't of State*, No. 1:23-CV-757-DAE, 2024 WL 1462948, at *3 (W.D. Tex. Feb. 9, 2024) (explaining that "consular nonreviewability applies and makes this action non-justiciable" when plaintiff challenged inaction on spouse's refused visa application); *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021) (explaining that "the doctrine of consular non-reviewability applies in full force.  We have no authority to second guess the visa decisions of the American consulate in

Yemen and thus leave those decisions in place."); *Yousufzai v. Garland*, No. 122CV1454MSNJFA, 2023 WL 4236906, at *3 (E.D. Va. June 27, 2023) ("[I]t would be improper to second-guess the Executive Branch's decision" to refuse visa application under doctrine of consular nonreviewability); *OC Modeling, LLC v. Pompeo*, Civ. A. No. 20-1687, 2020 WL 7263278, at *3 (C.D. Cal. Oct. 7, 2020) (consular nonreviewability doctrine prevents review of visa refusal decision). The consular nonreviewability doctrine does not permit a court to compel consular officials to repeatedly re-adjudicate visas that already have been refused. As such, Plaintiff's Complaint is subject to dismissal on this basis.

### C.    Plaintiff's Unreasonable Delay Claim Is Meritless.

Even if this Court considers the unreasonable delay claim on the merits, the "delay" is not unreasonable as Plaintiff's visa application was refused approximately four months ago.[5] Courts within this district routinely find such a "delay" not to be unreasonable. *See, e.g.*, *Kennedy*, 2025 WL 662566, at *3 (fifteen-month delay in scheduling visa interview not unreasonable); *Manshadi v. Allen*, No. 24-CV-10118-ADB, 2025 WL 524173, at *6 (D. Mass. Feb. 18, 2025) (twenty-four months since visa application placed in administrative processing "is not outside the bounds of reasonableness."); *Ghannad-Rezaie*, 2024 WL 4849587, at *5 (finding thirteen months between visa refusal and decision allowing motion to dismiss not an unreasonable period); *Durrani v. Bitter*, No. CV 24-11313-FDS, 2024 WL 4228927, at *6 (D. Mass. Sept. 18, 2024) (fourteen month delay in scheduling visa interview not unreasonable); *Celebi v. Mayorkas*, 744 F. Supp.3d 100, 107 (D. Mass. 2024) (three and one-half year wait for asylum interview not unreasonable); *Novack*

---

[5] The period of "delay" should be measured from the time of visa refusal. *See Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022) ("Courts measure the period of delay from the last government action to the issuance of the opinion"); *Parva v. Blinken*, No. CV TDC-23-3287, 2024 WL 4042466, at *5 (D. Md. Sept. 4, 2024) (calculating delay from "when the beneficiaries were interviewed and visas were refused").

*v. Miller,* 727 F.Supp.3d 70, 77 (D. Mass. 2024) (three year wait for I-601A waiver adjudication not unreasonable); *MM v. Bitter*, 1:22-cv-12236-LTS, Doc. No. 27 (D. Mass. Oct. 11, 2023) (twenty month wait for visa interview is not unreasonable); *V.U.C. v. U.S. Citizenship & Immigr. Servs.,* 557 F. Supp. 3d 218, 223-24 (D. Mass. 2021) (concluding that a nearly four-year delay was not unreasonable).

To determine whether agency action is unreasonably delayed, the Court should utilize the *TRAC* factors.[6]  *See V.U.C..,* 557 F. Supp. 3d at 223.  These factors are:

(1)     the time agencies take to make decisions must be governed by a rule of reason;

(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

---

[6] Courts routinely apply the *TRAC* factors in unreasonable delay cases at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim.  *See Celebi*, 744 F.Supp.3d at 105 (collecting cases from the District of Massachusetts that "have applied the so-called TRAC factors at the motion to dismiss stage to determine whether plaintiffs have sufficiently pled facts to support a claim of unreasonable delay.").

(6)     the court need not find any impropriety lurking behind agency lassitude in order to

hold that agency action is "unreasonably delayed."

*Id.* (internal citations and quotations omitted).  Here, with the visa application refused, and any

conceivable delay in re-adjudication spanning approximately four months, this Court should find

Plaintiff has failed to state a plausible claim and dismiss the Complaint.

      a.     ***TRAC* factor 1 and 2 favor Defendant.**

The first two *TRAC* factors are often reviewed together.  *Manshadi,* 2025 WL 524173 at

\*5.  Both factors weigh in Defendant's favor.  These factors ask whether the length of time for the

agency to act is governed by a "rule of reason" as informed by any specific timetable established

by Congress.  *Id.*

Here, "Congress has not provided a statutory or regulatory timeframe in which to

adjudicate visa applications, instead giving agencies wide discretion in the area of immigration

processing."  *Yacoub v. Blinken*, No. 21-CV-983 (TSC), 2022 WL 4598681, at \*4 (D.D.C. Sept.

30, 2022) (citation omitted).  Because Congress has established no firm timetable, the Court must

determine whether the application has been pending for an unreasonable amount of time as

established by case law.  *See Sarlak v. Pompeo*, Civ. A. No. 20 0035 (BAH), 2020 WL 3082018,

at \*6 (D.D.C. June 10, 2020). Courts routinely conclude that "delays" of similar length for visa

applications or other immigration applications do not constitute unreasonable delay.  *See e.g.,*

*Kennedy*, 2025 WL 662566, at \*3 (fifteen month delay in scheduling visa interview not

unreasonable); *Manshadi,* 2025 WL 524173, at \*5 (twenty-four months since visa application

refused "is not outside the bounds of reasonableness."); *Ghannad-Rezaie*, 2024 WL 4849587, at

\*5 (finding thirteen months between visa refusal and decision allowing motion to dismiss not an

unreasonable period); *Durrani*, 2024 WL 4228927, at \*6 (fourteen month delay in scheduling visa

interview not unreasonable); *Celebi* 744 F. Supp.3d at 107 (three and one-half year wait not unreasonable); *Novack,* 727 F.Supp.3d at 77 (three year wait not unreasonable); *MM,* 1:22-cv-12236-LTS, Doc. No. 27 at 12 (twenty months to schedule visa interview not unreasonable); *V.U.C.*, 557 F. Supp. 3d at 223-24 (nearly four-year delay not unreasonable); *Vorontsova v. Chertoff*, No. 07-10426-RGS, 2007 WL 3238026, *3 (D. Mass. Nov. 2, 2007) (holding that a 21-month delay was "not *per se* unreasonable"). As such, Plaintiff has failed to satisfy the first two *TRAC* factors.

> **b.**    ***TRAC* factors 3 and 5—The impact of the alleged delay on human health and welfare does not favor Plaintiff's claims.**

"The third and fifth factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). These factors also weigh in Defendant's favor despite Plaintiff's allegation that the delay is causing harm to Plaintiff and his company. Doc. 1, ¶ 6.

Defendant recognizes the generalized concerns raised by Plaintiff, but nonetheless argue that such concerns are not the types of hardship that courts have found may weigh in visa applicants' favor. *See Olofin v. U.S. Citizenship & Immigr. Servs.*, No. 22-CV-01684 (DLF), 2023 WL 1860962, at *5 (D.D.C. Feb. 9, 2023) (alleged adverse health consequences to applicants might push factors three and five in applicants favor); *Parva*, 2024 WL 4042466, at *7 (citing risk of physical harm or inability to access lifesaving medical procedures.). Courts routinely find economic hardships or claims of delayed educational opportunities to be insufficient to weigh these factors in favor of the visa applicant. *See Vafaei v. U.S. Citizenship & Immigr. Servs.,* No. CV 22-1608 (CKK), 2024 WL 1213394, at *5 (D.D.C. Mar. 21, 2024) (collecting cases finding financial harms do not tip factors in applicants' favor); *Daneshvarkashkooli v. Blinken,* No. CV 23-1225

(RJL), 2024 WL 1254075, at *5 (D.D.C. Mar. 25, 2024) (explaining that "these interests are no

different than those of any other foreign national with an F-1 visa application pending."); *Da Costa*

*v. Immigr. Inv. Program Off.*, 80 F.4th 330, 345 (D.D.C. 2023) ("financial harms … along with

the uncertainty that results any time an individual must continue to wait to secure a benefit, are

insufficient" to tip these factors in Plaintiff's favor.)

As such, these factors do not weigh in Plaintiff's favor.

> **d.    *TRAC* factor 4—Department of State's competing priorities weigh against expediting the re-adjudication of Plaintiff's visa application.**

The fourth *TRAC* factor also weighs in Defendant's favor and "ends up altogether dooming

[p]laintiff's claims of unreasonable delay." *Xiobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C.

2021).  This factor requires an assessment of "the effect of expediting delayed action on agency

activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.  The Court must determine

whether expediting the re-adjudication of Plaintiff's visa application "harm[s] other agency

activities of equal or greater priority." *Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-

1005 (CKK), 2021 WL 1110737, *7 (D.D.C. Mar. 22, 2021).  Courts must consider "competing

priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant

relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the

petitioner at the head of the queue [would] simply move [ ] all others back one space and produce

[ ] no net gain." *Mashpee*, 336 F.3d at 1100.

Courts in this district and around the country have refused to intervene and dictate internal

agency processes when faced with similar requests.  *See e.g.*, *Kennedy*, 2025 WL 662566, at *4

(expediting review of visa application would leapfrog applicants to the front of the line "without

improving the general efficiency of the visa application process while harming other applicants.");

*Manshadi*, 2025 WL 524173, at *6 (finding no reason to depart from principle of declining to

move a plaintiff to the front of the queue which would just move others back one space.); *Durrani*, 2024 WL 4228927, at *5 (factor four "weighs heavily in favor of defendants."); *Celebi*, 744 F. Supp.3d at 107 (allowing plaintiff's "request for a judicial remedy would be arbitrary and would incentivize and reward litigation that may further complicate" the agency's adjudicatory efforts.); *Novack*, 727 F.Supp.3d at 77 ("If the Court were to grant the relief [p]laintiff requests, it would simply move her application ahead of others who have waited longer for the same relief."); *MM,* 1:22-cv-12236-LTS, Doc. No. 27 at 13-14 (finding factor four favors defendants as plaintiff's "argument ignores the inevitable effects of a decision impacting the allocation of resources as to which demand vastly outpaces supply."); *V.U.C.*, 557 F. Supp. 3d at 223 ("expediting plaintiffs' petitions would displace other petitioners in the queue who have waited longer for the same relief.").

Plaintiff has not alleged sufficient facts to establish why he should receive priority over similarly situated applicants. *See Durrani*, 2024 WL 4228927, at *5 ("plaintiff does not allege sufficient facts suggesting that the government has treated him or his mother differently than any of the other tens of thousands of applicants who have also waited" during the visa process). An order compelling re-adjudication of Plaintiff's visa application ahead of other similarly situated applicants would provide "no gain in average speed. The number of applicants would stay the same. The number of [Department of State] workers and resources would stay the same. All that would be achieved is a shuffling of the order." *Yilmaz v. Jaddou*, No. SACV2300972CJCJDEX, 2023 WL 7389848, at *7 (C.D. Cal. Oct. 4, 2023). Accordingly, *TRAC* factor four also weighs in favor of Defendant.

     **e.**    *TRAC* **factor 6—No claim of bad faith or impropriety is presented.**

Regarding this factor, Plaintiff has not alleged any impropriety, "and a mere . . . delay is insufficient to show impropriety." *Yacoub*, 2022 WL 4598681 at *6 (citation omitted). This Court should find that this factor weighs in Defendant's favor, or at least is neutral. With the *TRAC* factors squarely in the Defendant's favor, Plaintiff's unreasonable delay claim, if considered by this Court, must be dismissed for failure to state a claim.[7]

                             Respectfully submitted,

                             LEAH B. FOLEY
                             United States Attorney

Dated: June 23, 2025        By:    */s/ Nicole M. O'Connor*
                             Nicole M. O'Connor
                             Assistant United States Attorney
                             United States Attorney's Office
                             1 Courthouse Way, Suite 9200
                             Boston, MA 02210
                             Tel.: 617-748-3112
                             Email: Nicole.O'Connor@usdoj.gov

---

[7] For the reasons precluding relief under the APA, Plaintiff also is not entitled to mandamus relief. *See Pishdadiyan v. Clinton*, No. 11-cv-10723, 2012 WL 607907, at *11 (D. Mass. Feb. 7, 2012) ("Courts in this circuit and others . . . construe the APA and the [Mandamus Act] to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa … without unreasonable delay."); *Durrani*, 2024 WL 4228927, at *6 (same).

## <u>CERTIFICATE OF SERVICE</u>

I, Nicole M. O'Connor, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: June 23, 2025                    By:    /s/ *Nicole M. O'Connor*
                                               Nicole M. O'Connor
                                               Assistant United States Attorney